# EXHIBIT "A"

# COPY

David R. Shoop, Esq., State Bar No. 220576
Thomas S. Alch, Esq., State Bar No. 136860
**SHOOP | APLC**
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
Telephone:    (310) 620-9533
Facsimile:    (310) 620-6330

Attorneys for Plaintiffs,
**CARMEN THOMAS BUTLER and
UNICE BUTLER**

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 1 2 2019

L. Freeland

**BY FAX**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| **CARMEN THOMAS BUTLER and UNICE BUTLER,** <br><br> Plaintiffs, <br><br> vs. <br><br> **TRISTAR PRODUCTS, INC., and DOES 1 through 100, Inclusive,** <br><br> Defendants. | Case No. **RIC 1904666** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **NEGLIGENCE** <br> 2. **STRICT PRODUCTS LIABILITY** <br> 3. **BREACH OF IMPLIED WARRANTY** <br> 4. **FAILURE TO RECALL/RETROFIT** <br> 5. **FRAUDULENT CONCEALMENT** <br> 6. **LOSS OF CONSURTIUM** <br><br> **DEMAND FOR JURY TRIAL** |

COME NOW plaintiffs, CARMEN THOMAS BUTLER and UNICE BUTLER, hereby complain and allege by way of their undersigned counsel, causes of action against Defendants, and each of them as follows:

### THE PARTIES

1.     At all times herein mentioned, Plaintiff CARMEN THOMAS BUTLER was and is a resident of the State of California, County of Riverside.

2.     At all times herein mentioned, Plaintiff UNICE BUTLER was and is a resident of the State of California, County of Riverside.

1
COMPLAINT

3.      At all times herein mentioned, Defendant, TRISTAR PRODUCTS, INC., ("Defendant" or "Tristar") was and is a Pennsylvania corporation with its principal place of business in New Jersey, and subject to the jurisdiction of this court. Tristar was and is authorized to conduct business in the State of California and continues to do so. Tristar has done and continues to do business as Tristar.

4.      Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, Defendant, Tristar and DOES 1 through 100, (collectively, "Defendants"), were and now are engaged in the business of formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, supplying, selling, inspecting, servicing, repairing, installing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and advertising certain pressure cookers, one of which was sold to Plaintiff and which was continuously owned and used by Plaintiff from that time through and including December 8, 2018.

5.      The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs as hereinafter alleged.

6.      At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venturer of each of the other Defendants and at all said times, each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter because Defendants conduct business in, have their principal place of business within, purposely avail themselves of, or reside within the State of California and Riverside County.

8.      Venue is proper in this Court pursuant to *California Code of Civil Procedure § 395(a)* because Plaintiffs, CARMEN THOMAS BUTLER and UNICE BUTLER, sustained injuries in, and

reside in, Riverside County.

## **FACTUAL INTRODUCTION**

9.     Defendant Tristar designs, manufacturers, markets, imports, distributes and sells a variety of "innovative "consumer products such as the Jack LaLanne Power Juicer, the Genie Bra,[2] and Copper Chef Cookware[4], amongst others. It holds itself out to be a "recognized pioneer of taking innovative ideas and turning them into branded worldwide distributed products."[1]

10.     Defendant Tristar accredits its great successes to its "[d]edication to high standards and quality manufacturing makes Tristar Products an internationally respected infomercial leader." "With well established brands, proven international and domestic distribution channels…the best team in the industry and quality manufacturing that attracts celebrity endorsements, Tristar Products Inc. has exceeded over a billion dollars in sales."

11.     Defendant Tristar aggressively warrants, markets, advertises and sells its Pressure Cookers as "state of the art kitchen science,"[5] allowing consumers to cook "wholesome, sit down, family-style meal[s] with just the push of a button;"[6] "in a fraction of the time"[7] as other kitchen appliances; and that "[t]here's no safer way to cook."[8]

12.     Additionally, in the section of its website titled the "Power Pressure Cooker XL vs. The Competition," Defendant Tristar emphasizes the "Built-In Safety Features" as one of the characteristics that helped the Pressure Cooker become "The Best Electronic Power Cooker On The Market."[9]

13.     To further propagate its message, Defendant Tristar has, and continues to utilize numerous media outlets including, but not limited to, television infomercials, social media websites such as YouTube, third-party retailers, and professional chef endorsements. For example,

---

[1] https://www.tristarproductsinc.com/about-tristar-products-inc.php ("over $1 billion in retail sales").
[2] *Id.* ("the number one selling seamless bra in the world").
[4] *Id.* ("over $200 million in sales").
[4] *Id.*
[5] https://www.youtube.com/watch?v=hN13IrMs_S4 at 1:34-1:35 (last accessed August 31, 2017).
[6] *Id.* at 9:04 - 9:08.
[7] *Id.* at 9:08 – 9:10.
[8] https://www.youtube.com/watch?v=kCESkfSSROk at 2:54 (last accessed August 31, 2017).
[9] http://www.powerpressurecooker.com/comparison.php (last accessed August 31, 2017).

the following can be found on Defendant Tristar's Power Pressure Cooker XL website[10] from "culinary expert," Eric Theiss, who is featured in many of Defendant Tristar's YouTube videos, as well as its television infomercial:

"I have seriously never seen a cook tool so easy, so versatile, so affordable that anyone can make quality, delicious meals, perfectly cooked from the very first time! The Perfect Cooker is the one pot that does it all!"[11]

14.     In one YouTube video, Mr. Theiss states that "when your Pressure Cooker is up to pressure, the lid locks on. I couldn't get this lid open if I wanted to. There's no way you're gonna open it. So, it's loaded with safety features, you guys. So, if you've never used a pressure cooker before, this is one of the safest ones you can get."[12] Later in the video, when Mr. Theiss is releasing the pressure from the Pressure Cooker, he states that "even if I wanted to," he couldn't open the lid "because the pressure is still inside."[13] The Pressure Cooker "knows" when the pressure has fully released and will unlock "automatically."

15.     During the ordinary and routine operation of the Pressure Cooker, the unit generates heat and steam to cook; utilizing temperatures up to 248 degrees Fahrenheit (120 degrees Celsius), which is intended to create "a more sterile and healthier environment when compared to traditional cooking methods".[14]

16.     According to the Owner's Manual[15] accompanying each individual unit sold, the Pressure Cookers purport to have "Built-In Safety Features," misleading the consumer into believing that the Pressure Cookers are reasonably safe for their normal, intended use. Said "Safety Features" include, but are not limited to, the following:

a. Lid Safety Device: Prevents pressure build-up if lid is not closed properly and prevents lid from opening until all pressure is released.

---

[10] http://www.powerpressurecooker.com/?gclid_Cj0KEQjw4cLKBRCZmNTyyovvj-4BEiQAI_sgQvo_7hhyOkU0DOfmJ0ZaW4G7brJ22YwsEEHAaros9zUaAqMb8P8HAQ (last accessed August 31, 2017).
[11] http://www.powerpressurecooker.com/about.php (last accessed August 31, 2017).

[12] https://www.youtube.com/watch?v=UsYE9eIntQLs&feature_youtu.be (last accessed August 31, 2017).
[13] Id.
[14] Power Pressure Cooker XL, Model No. PPC-770 Owner's Manual at pg. 2.
[15] Attached hereto and incorporated by reference as Exhibit A is the aforementioned Owner's Manual for the subject Power Pressure Cooker XL, Model No. PPC-770.

b.   Pressure and Temperature Sensor Controls: Maintain even heat and pressure by automatically activating or deactivating the power supply.

c.   "Back-up" Safety Release Valve: Should the Temperature/Pressure Sensor device malfunction, causing pressure to build beyond maximum setting, the "Back-Up" will automatically "kick in" and release the built-up pressure.

d.   "Clog Resistant" Feature: Prevents food from blocking the steam release port.

e.   "Spring-Loaded" Safety Pressure Release: Should all safety features listed above fail, this "spring-loaded" device located beneath the heating element will automatically lower the Inner Pot, causing it to separate automatically from the Rubber Gasket. This will enable the steam and pressure to automatically escape around the pot Lid, avoiding a dangerous situation.

f.   Temperature "Cut-Off" Device: Should the unit malfunction and cause the internal temperature to rise beyond the "Safe" limit, this device will cut-off the power supply and will not automatically reset.[16]

17.   In addition to the "Built-In Safety Features" listed in the manual, in Defendant Tristar's "Frequently Asked Questions" YouTube video,[17] Defendant Tristar states that lid of the Pressure Cookers "should only come off if there [is] no pressure inside."[18] Specifically:

a.   "People worry that the lid might come off. It won't." (1:02)

b.   "The lid on the Power Pressure Cooker XL can only come off if there's no pressure left inside the pot. And remember, if there is pressure present inside the pot, the lid will stay securely closed so you don't have to worry." (1:02)

c.   "Once your meal is finished, the unit will depressurize and automatically stop cooking and switch to the Keep Warm mode. There's no safer way to cook." (2:54)

18.   By reason of the forgoing acts or omissions, the above-named Plaintiffs purchased their Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

19.   Plaintiff used her Pressure Cooker for its intended purpose of preparing meals for themselves

---

[16] Power Pressure Cooker XL, Model No. PPC-770 Owner's Manual at pg. 2,
[17] https://www.youtube.com/watch?v=kCESkfSSROx (last accessed August 31, 2017).
[18] Power Pressure Cooker XL, Model No. PPC-770 Owner's Manual at pg. 3.

and their families and did so in a manner that was reasonable and foreseeable by Defendant Tristar.

20.   However, the aforementioned "Safety Features" of the Pressure Cooker was defectively designed and manufactured by Defendant Tristar in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the Pressure Cookers.

21.   Defendant Tristar's Pressure Cookers possess defects that makes them unreasonably dangerous for their intended use by consumers because the lid be rotated and opened while the unit remains pressurized.

22.   Further, Defendant Tristar's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

23.   Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized. Examples of such designs include, but are not limited to, the following examples:

a. Designing the Pressure Cooker with a longer locking pin that could be griped between user's thumb and the forefinger, in combination with changing the base unit locking lug ramp angle on the locking lug adjacent the locking pin from 45-degrees to 90-degrees;

b. Designing a lid shield with fewer holes for steam passage, and with those holes positioned as far away as possible from the manual release and floating valves to reduce the likelihood of clogging, and,

c. Designing the holes in the lid shield to direct any contents away from the valve.

24.   Defendant Tristar knew or should have known that its Pressure Cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant Tristar continues to ignore and/or conceal its knowledge of the Pressure Cooker's defects from the general public, and continues to generate a substantial profit from the sale of its Pressure Cookers, demonstrating a callous, reckless, willful, depraved indifference to health, safety and welfare of Plaintiffs and consumers like them. For example:

a. The Consumer Products Safety Commission has received several reports of other similar incidents stemming from the failure of the Power Pressure Cooker XL and other Power Cooker models[19] with the same supposed "Built-In Safety Features," and design defects such as the following:

    i.    May 12, 2013: ("I purchased a power pressure cooker that said it had a built- in safety feature[.] I did as the instructions said as far as my 1st use. Cook[ed] some water for 15 mins. After that it was ready for use[.] I cooked some collard greens and after I released all the pressure, I turned the handle...and it exploded all over and my husband and I got burned. I will never again in [my] life recommend this product to anyone! It is not safe at all!!!")

    ii.    September 1, 2014: ("Person was using a Tristar Products, Inc. ("Tristar") Model # PC TR16 Serial # CA0148623 pressure cooker for the first time. The top of the cooker came off unexpectedly and the contents exploded out of the cooker.")

    iii.    October 21, 2014: ("After hearing the loud boom [I] checked the cooker saw the mess it created and the lid was detached from the cooker sitting upside down on the pot.")

    iv.    February 8, 2015: ("My "Power Pressure cooker" exploded with fire hot chicken soup in it, covering my entire kitchen, hitting m[e] in the head with a piece of chicken, and burning my arm. My 7-year-old child and his friend had just came through the [sic] kitchen not seconds before this happened. The [explosion] did damage to my walls and cabinets, and had anyone been standing closer to it, it could have killed or seriously injured my family and my son['s] friend.")

    v.    October 4, 2015: ("[O]n October 4, 2015 the pressure cooker had a bad malfunction[.] [T]he lid released when it was not suppose[d] to...I went to opened the pressure cooker and it exploded...I looked at my arm saw my skin coming off then I knew we had to go to the hospital.")

    vi.    October 10, 2015: ("Consumer was cooking pea soup in pressure pot XL. Consumer walked into the room where the pea soup was cooking, and the pressure pot lid exploded all over consumer.")

---

[19] Defendant Tristar's other Power Cooker models (PC-WAL1 and PC-TR16) and Power Pressure Cooker XL models (PCXL-PRO6, PPC-770-1, PPC-780, PPC-780P and PPC-790) have experienced numerous, similar occurrences like those alleged by the Plaintiff herein

vii.    February 25, 2016: ("I was preparing dinner for my family using the Power Pressure Cooker XL. I had selected the soup option and set the timer for 25 minutes. When the timer went off notifying me that the cooking was complete, I turned the pressure release valve allowing the pressure to escape. I let this action continued [sic] for over 15 minutes until the valve dropped and no other pressure released. I then went to turn the lid to remove when the pressure from the cooker exploded causing hot scalding soup to erupt all over my kitchen and myself. I received second degree burns on my left hand and right breast. My doctor prescribed Silvadene to help with the healing process and deter infection but will be going for a would check to ensure it is healing properly.")

viii.    March 15, 2016: ("Consumer was cooking with the pressure cooker, then released the pressure valve. Then [later] came to open it and the lid blew off and contents exploded all over consumer's body. Product was supposed to stay locked until all pressure was released, which it did not")

ix.    May 30, 2016: ("Went to open pressure cooker. Turned the valve to release the pressure and it did not release. [I] attempt[ed] to repeat this step with no change. Went to turn the lid and open the cooker. Pressure cooker contents burst and burned me.")

x.    November 1, 2016: ("We were using a Tristar Pressure Cooker last night when 10 minutes into the cook time we heard a loud pop and a steaming sound. We went into the kitchen to see that it had popped its seal and was unlocked with steam coming out. We quickly unplugged it and turned the pressure release button. We didn't open it until it was finished steaming and then open it. We didn't use it again.")

xi.    March 23, 2017: ("Pressure cooker malfunction resulting in injury. At approximately 5:50 pm, I was cooking dinner in the Power Cooker Plus (Tristar) pressure cooker. I have used it many times and I am very familiar with pressure cooker usage. When the meal was done, I manually released the pressure using the valve. Believing the pressure to be fully released, I attempted to turn the lid. The lid is advertised as a safety lid that should not turn if there is any pressure. However, the lid did turn and, as it did, the scalding hot contents of the pot erupted and shot out of the pressure cooker.")

xii.    May 30, 2017: ("My wife was cooking dinner using Tristar power pressure cooker xl. The product indicated it was done and all directions were followed to release pressure. While releasing cover the contents exploded all over leaving my wife with second and third degree burns on her hands, arms, chest and stomach.")

b. Several lawsuits have been filed in District Courts throughout the United States alleging failure of the Power Pressure Cooker XL and Power Cooker models with the same supposed "Built-In Safety Features" and design defects. Specifically, see the following:

i.    Ninfa Vasquez and Jose Vasquez v. Tristar Products, Inc. (Filed in the Southern District of Texas Brownsville Division, June 12, 2016.) ("Mrs. Vasquez used the cooker for the first time on August 2, 2014 and followed all instructions enclosed with the cooker. She intended to prepare pinto beans for her family's dinner that evening. Approximately two hours after unplugging the cooker, suddenly and without warning, the lid blew off of the cooker, and the pinto beans burst out of the cooker onto Mrs. Vasquez, resulting in extensive and severe burns to her body.") Plf. Compl. ¶ 10.

ii.    Serguei Tchernykh & Liliya Bekteva v. Bed Bath & Beyond. Inc. v. Tristar Products, Inc. (Filed in the Southern District of Florida Miami Division, June 24, 2015.) ("As a result of a malfunction of the subject Pressure Cooker [on September 30, 2015], Plaintiff sustained severe burns.") Plf. Compl. ¶ 7.

iii.    Ana R. Frias, Individually and on behalf of her infant child, Annel Frias v. Tristar Products, Inc. (Filed in the Western District of Texas San Antonio Division, January 29, 2016.) ("At around 11:30 AM [on December 22, 2015] when Ana Frias attempted to remove the lid from the subject pressure cooker, the subject pressure cooker exploded, causing scalding hot liquid and steam to fly up and out of the pressure cooker, and onto the Plaintiff, Ana Frias and infant Annel Frias.") Plf. Compl. ¶ 5.

iv.    Tonia Kaye Carroll & Kerry Dale Carroll v. Tristar Products, Inc. (Filed in the Middle District of Tennessee Columbia Division, February 17, 2016.) ("On or about March 18, 2015 Plaintiff Tonia Carroll was seriously injured during normal and ordinary use of the product when the Power Cooker exploded as the result of a malfunctioning lid. Specifically, and because

of its defect and in conflict with the representations contained in the instruction manual, the lid was not prevented from opening while the unit was under pressure.") Plf. Compl. ¶ 7.

v.      Melanice Landrum v. Tristar Products, Inc. (Filed in the Eastern District of Michigan Southern Division, March 24, 2016.) ("On or about May 12, 2014, Plaintiff was cooking food in the Defendant's Power Cooker. Per the instructions, after the Power Cooker light indicated the food was cooked, Plaintiff repeatedly slid the pressure release lever to release any remaining pressure. After waiting approximately fifteen more minutes, Plaintiff again slid the pressure release lever back and forth. As Plaintiff opened the unit, the food suddenly exploded out of the unit, spraying all over the kitchen walls and ceiling, and causing serious burn injuries to Plaintiff as described below.") Plf. Compl. ¶¶ 14, 15.

vi.      Ayesha Mack, individually, and as Next Friend of DM, a minor v. Tristar Products, Inc. (Filed in the Eastern District of Michigan Southern Division, March 30, 2016.) ("On or about October 4, 2015, Plaintiff was cooking roasted potatoes in the Defendant's Power Cooker. Per the instructions, after the Power Cooker light indicated the food was cooked, Plaintiff repeatedly slid the pressure release lever to release any remaining pressure and fully opened the valve. After waiting several more minutes, Plaintiff looked at the pressure relief valve and saw no steam coming out of the valve. Suddenly, as Plaintiff opened the unit, the food exploded out of the unit, spraying all over the kitchen walls and ceiling, and causing serious burn injuries to Plaintiff and her five-year-old daughter, DM...") Plf. Compl. ¶¶ 14, 15.

vii.      Kenya Allen & Loren Allen v. Tristar Products, Inc. (Filed in the Northern District of Georgia Atlanta Division, August 18, 2016.) ("At approximately 7:30 p.m. on March 26, 2016, Mrs. Allen was using the subject pressure cooker to prepare a meal for her family that was coming into town the following day for an Easter holiday celebration. However, with no active inputs by Plaintiff or anyone else, the subject pressure cooker exploded on the stovetop in the Plaintiff kitchen during this ordinary use, with the top of the pressure cooker blowing off the remainder of the product, causing scalding hot liquid, contents and steam to fly up and out of the pressure cooker, and onto Mrs. Allen, who was standing nearby in the kitchen innocently speaking with her sister on the telephone and not engaging the cooker.") Plf. Compl. ¶ 8.

viii.    DLP, a minor child by and through April Presnell, his mother, custodial parent, and next friend, v. Tristar Products, Inc. (Filed in the Northern District of Georgia Gainseville Division, November 8, 2016.) ("At approximately 7:00 p.m. on July 24, 2016, Ms. Payne was using the subject pressure cooker to prepare a meal for her family as well as for DLP. However, even after unplugging the pressure cooker and allowing it to sit for over one hour, the subject pressure cooker exploded on the countertop in Ms. Payne's kitchen during this ordinary use, with the top of the pressure cooker blowing off the remainder of the product, causing scalding hot liquid, contents and steam to fly up and out of the pressure cooker, and onto DLP, who was standing nearby in the kitchen and not engaging the cooker.") Plf. Compl. ¶ 7.

ix.    Lori Haines v. Tristar Products, Inc. (Filed in the Southern District of Texas Brownsville Division, December 22, 2016.) ("Ms. Haines used the cooker on January 13, 2015 and followed all instructions enclosed with the cooker. She intended to prepare stew for her family's dinner that evening. She first cooked the meat for the stew for twenty minutes in the cooker. She then opened the cooker and added vegetables and started the cook cycle again. After she finished the second cook cycle, she and her son released steam from the cooker and she held the cooker while her son began to open the lid. As he started to open the lid, it burst open, spraying her with the scalding hot contents and resulting in extensive and severe burns to her arm, chest, and stomach.") Plf. Compl. ¶ 12.

x.    Jeremy Marcotte v. Tristar Products, Inc., (Filed in the Western District of Louisiana Lafayette Division, February 27, 2017.) ("On or about May 19, 2016 suddenly and without warning, the lid blew off of the cooker, and the contents burst out of the cooker onto Mr. Marcotte, resulting in extensive and severe burns to his body.") Plf. Compl. ¶ 8.

xi.    Carolyn Johnson and Jessie Mayberry v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., Zhongshan Jincheng Electric Appliance Co., LTD., XYZ Corporations 1-5, Docs 1-5, (Filed in the Direct of New Jersey Newark Division, July 24, 2017.) ("On or about July 25, 2016, Plaintiff Carolyn Johnson and Jessie Mayberry, were using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker.

While using the Pressure Cooker to prepare a meal. it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.") Plf. Compl. ¶¶ 23, 24.

xii.     Beth Morales v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., Zhongshan Jincheng Electric Appliance Co., LTD., XYZ Corporations 1-5; Does 1-5, (Filed in the Southern District of Florida, August 11, 2017.) ("On or about October 30, 2016, Plaintiff was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.") Plf. Compl. ¶¶ 23, 24.

c. The same is true for state courts around the country:

i.     Angela Strickland and Mack Edwards v. Tristar Products, Inc., (Filed in the State Court of Chatham County. State of Georgia, January 11, 2016, notice of removal filed in the Southern District of Georgia, February 10, 2016.) ("While the Power Cooker XL was operating, it exploded in front of Plaintiff, causing them serious injuries. As a result of their burns, Plaintiff were transported to the Joseph M. Still Burn Center in Augusta, Georgia where they both underwent skin grafts and have endured significant mental and physical pain and suffering.") Plf. Compl., ¶¶ 15, 16.

ii.     Samantha Williams v. Tristar Products, Inc., (Filed in the Superior Court of Lanier County, State of Georgia, February 27, 2017, notice of removal filed in the Middle District of Georgia, April 20, 2017.) (On or about February 14, 2017, Plaintiff "approached the subject pressure cooker and lightly pressed the cancel button when suddenly and without warning, the subject pressure cooker exploded on the countertop during this ordinary use, with the top of the subject pressure cooker blowing off the remainder of the product, causing the scalding hot beef stew to fly up and out of the subject pressure cooker and onto [her]." As a result, Plaintiff claims that she "suffered severely painful and disfiguring second-degree burns, scalding her neck all the way down to her chest to above the belly button, both breasts, and her entire right arm from her shoulder down to the wrist," and that she "was experiencing such

excruciating pain that the medical personnel [that subsequently treated Plaintiff] had to put her under anesthesia to continue with their assessment and treatment of the burns."). Plf. Compl., ¶¶ 13-16.

    iii.    Lyndsay Moyer and Ryan Moyer v. Wal-Mart Stores East, LP, et. al. (Filed in the Philadelphia Court of Common Pleas, March 10, 2017) (On or about March 30, 2015 "Ryan then turned the lid of the Pressure Cooker in reasonable and normal manner to open it, freely and without force. Immediately upon opening the lid the Pressure Cooker exploded sending its scalding hot liquid contents all over Lyndsay including her entire chest and neck and both arms and hands.") Plf. Compl., ¶ 24.

    iv.    Nushon Scales v. Tristar Products, Inc., and Wal-Mart Stores, Inc., (Filed in the Superior Court of Connecticut at Bridgeport, State of Connecticut April 6, 2017, notice of removal filed in Connecticut District Court, May 9, 2017.) ("On or about April 9, 2015, the Plaintiff was using said Pressure Cooker to cook vegetables when it suddenly and without warning exploded, spraying the Plaintiff with stem, hot liquid and/or cooking debris causing the injuries and damages herein after set forth.") Plf. Compl., ¶ 10.

    v.    Sandra Pulgarin v. Tristar Products, Inc. Zhongshan USTA Electric Appliance Co., LTD, and Does 1 to 100, inclusive (Filed in the Superior Court of California, Los Angeles County Central District, April 26, 2017, notice of removal filed in California Central District Court, July 6, 2017.) ("[O]n or about May 11, 2015…Plaintiff was burned, bruised, and suffered physical injury…The product that caused the [incident] - a Power Pressure Cooker XL, model number PCXL-PRO6…Plaintiff's injuries were caused when the [subject product] suddenly released stem and superheated air and food from the body of the [subject product], burning her.") Plf. Compl., ¶ 1.

    vi.    Maria Bownes v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, and Pro QC International, LTD. (Filed in the Superior Court of New Jersey Law Divisions for Essex County, State of New Jersey May 8, 2017, notice of removal filed in New Jersey District Court, May 24, 2017.) ("On or about May 30, 2016, Plaintiff [Maria Bownes], was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker.

While suing the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and stem to fly out of the Pressure Cooker and onto the Plaintiff.") Plf. Compl., ¶¶ 16,17.

vii.    Latosha Galloway, an individual v. Tristar Products, Inc., a Pennsylvania corporation; and Bed Bath & Beyond, Inc., d/b/a BBB, a New York Corporation (Filed in the Superior Court of the State of Washington for King County, May 30, 2017, notice of removal filed in the Western District of Washington, June 29, 2017.) ("On or about February 12, 2017, Latosha Galloway was in her home and decided to use the subject Pressure Cooker to prepare beef stew for her family. Ms. Galloway placed beef into the Subject Pressure Cooker, locked the lid, and set it to cook for approximately forty minutes. Ms. Galloway was using the Subject Pressure Cooker in a normal foreseeable fashion and in accordance with its intended purpose. After a few minutes, Ms. Galloway heard a strange steaming noise emitting from the Subject Pressure Cooker, which she had never heard before. She approached the Subject Pressure Cooker and noticed stem being released from an odd place on the Subject Pressure Cooker. Ms. Galloway unplugged the Subject Pressure Cooker, and waited a minute, watching the Subject Pressure Cooker. After a minute, Ms. Galloway slightly tapped the lid's handle to see whether the lid was still locked into the secure position; it was not...Ms. Galloway quickly moved the handle back to the locked position, when suddenly and without warning, the Subject Pressure Cooker exploded on the countertop during ordinary use, with the top of the Subject Pressure Cooker blowing off the remainder of the product, causing the scalding ho beef, water, and steam to fly up and out of the Subject Pressure Cooker and onto Ms. Galloway.") Plf. Compl., ¶ 15.

viii.    Amanda Olano v. Tristar Products, Inc. (Filed in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana, November 30, 2016, notice of removal filed in the Middle District of Louisiana, June 5, 2017.) ("Plaintiff suffered 'severe and debilitating bodily injuries including first, second and third degree burns to her left hand and arm that have required medical treatment' and claims she has' suffered disfigurement and scarring to her left hand and arm'. Plaintiff seeks to recover for past, present and future damages of 'physical pain and suffering, mental pain, anguish and distress, loss of enjoyment of life, embarrassment, loss

of income, disability…medical expenses' and further seeks damages for 'impairment of future earning capacity.'") Def. Mot. Rmvl., ¶ 14.

ix.    Wendy Soto v. Tristar Products, Inc., a Corporation, Costco Whole Corporation, a Corporation, Costco Wholesale Membership, Inc., a Corporation; and Does 1-100, inclusive (Filed in the Superior Court of the State of California, County of Santa Barbara, July 21, 2017, notice of removal filed in California Central District Court, August 29, 2017.) ("Plaintiff's Complaint alleges liability for injuries allegedly suffered as a result of a Tristar Power Pressure Cooker XL malfunction.") Def. Mot. Rmvl., ¶ 3; Plf. Compl., ¶ 8.

x.    Jeni Chaney and Brian Burnett v. Tristar Products, Inc., et. al. (Filed in the United States District Court for the Middle District of Florida, Tampa Division, September 22, 2017.) ("On or about November 26, 2016, Plaintiffs, Jeni Chaney and Brian Brunet, were using the Pressure Cooker while in Pasco County and followed all enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiffs.") Plf. Compl., ¶¶ 27, 28.

xi.    Catherine Komertz and Scott Miller v. Tristar Products, Inc., et. al. (Filed in the United States District Court for the Middle District of Florida, Tampa Division, September 22, 2017.) ("On or about April 22, 2017, Plaintiffs Catherine Komertz and Scott Miller, were using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiffs.") Plf. Compl., ¶¶ 27, 28.

d. A class action lawsuit was filed on May 10, 2016 in the in the Northern District of Ohio Eastern Division alleging similar incidents, failures and defects. The case of Kenneth Chapman, Jessica Vennel, and Jason Jackson, on behalf of themselves and all other similar situated v. Tristar Products, Inc. (1:16-cv-1114) went to trial by jury on Monday, July 10, 2017, with the Honorable Judge James Gwin presiding. The matter settled prior to the jury returning a verdict.

25.    As a direct and proximate result of Defendant Tristar's intentional concealment of such

defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiffs purchased and used an unreasonably dangerous Pressure Cooker, which resulted in significant and painful bodily injuries upon the Plaintiff's premature removal of the lid of her Pressure Cookers.

26.     Consequently, the Plaintiffs in this case seek compensatory damages resulting from the use of Defendant Tristar's Pressure Cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## FIRST CAUSE OF ACTION

*(FOR NEGLIGENCE BY PLAINITFFS CARMEN THOMAS BUTLER*

*AND UNICE BUTLER AGAINST DEFENDANTS, TRISTAR PRODUCTS,*

*INC ; AND DOES 1-100, INCLUSIVE)*

27.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28.     At all times herein mentioned, Defendants were and are engaged in the business of formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, supplying, selling, inspecting, servicing, repairing, installing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and advertising the Pressure Cooker(s).

29.     Defendants had a duty to exercise due care in formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, supplying, selling, inspecting, servicing, repairing, installing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and advertising the Pressure Cooker and Defendants breached said duty of due care.

30.     At all times herein mentioned, Defendants negligently and carelessly formulated, researched, developed, manufactured, fabricated, designed, produced, created, modified, labeled, assembled, tested, distributed, leased, bought, supplied, sold, inspected, serviced, repaired, installed,

marketed, promoted, warranted, re-branded, manufactured for others, packaged, provided use instructions and warnings for, and advertised the Pressure Cooker so that the Pressure Cooker failed and caused personal injuries to users, consumers, workers, bystanders, and others, including Plaintiffs herein while being used in a manner that was reasonably foreseeable, thereby rendering the Pressure Cooker unsafe and dangerous for their intended uses.

31.     Defendants knew, or in the exercise of due care should have known, that the failure to exercise due care in the formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, supplying, selling, inspecting, servicing, repairing, installing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and advertising the Pressure Cooker would cause, or would foreseeably result in, harm to intended and foreseeable users and bystanders including Plaintiffs herein.

32.     Specifically, and without limitation, Defendants were negligent in the formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, supplying, selling, inspecting, servicing, repairing, installing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and advertising the Pressure Cookers in that they failed to ensure that the Pressure Cooker would not fail or catastrophically rupture or explode when used as intended by or in a manner reasonably foreseeable to Defendants thereby posing a risk of injury and so to actually cause injury as complained of herein.

33.     A manufacturer, seller and/or distributor of a product is under a duty to exercise reasonable care in its design of a product so that it can be safely used as intended by the buyer and/or consumer. (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135 at 141). This duty extends to all persons within the range or zone of potential danger.

34.     At all times and places mentioned herein, Defendants owed a duty to Plaintiffs to exercise reasonable care in its design of the Pressure Cooker so that the Pressure Cooker could be safely used as intended.   Defendants were engaged in the business of designing, manufacturing, assembling, distributing, selling, testing, warning, and otherwise placing into the stream of commerce, the Pressure

Cooker for sale and use by members of the general public, and as such, Defendants owed a duty to the general public and to Plaintiffs to produce, design, manufacture, assemble, distribute, sell and otherwise place into the stream of commerce products, including the Pressure Cooker, that were and are safe for their intended and foreseeable use, and free from defects.

35.     At all times mentioned herein, Defendants, and each of them, engaged in the business of designing, manufacturing, assembling, testing, inspecting, warning, distributing, promoting, and selling for retail to members of the general public in the State of California a certain product, the subject Pressure Cooker, which was sold with knowledge that same would be purchased and used without inspection of defect.

36.     At all times and places mentioned herein, Defendants were engaged in the business of designing, marketing and otherwise placing into the stream of commerce said Pressure Cooker for sale and use by members of the general public, and as such defendants, and each of them, owed the general public and Plaintiffs a duty to design, market, promote and otherwise place into the stream of commerce products that are safe in their intended and foreseeable use.

37.     At all times and places mentioned herein, Defendants negligently produced, manufactured, assembled, designed, tested, failed to warn, distributed, marketed and sold the subject Pressure Cooker in a defective and dangerous condition as described at length, hereinabove.

38.     Defendants breached their duty to the public and to Plaintiffs by failing to design, assemble, test, manufacture, warn and otherwise fabricate the subject Pressure Cooker so as to avoid its unsafe and hazardous operational characteristics and safety defects, amongst others.

39.     As a direct and proximate result of the negligence of Defendants, Plaintiff CARMEN THOMAS BUTLER was severely injured as described herein described and suffered severe and permanent physical and emotional injuries including, but not limited to, severe burns and scarring over her body.

40.     As a direct and proximate result of the aforesaid conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER has suffered permanent injuries to her person, body and health, all to her general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

41.     As a direct and proximate result of the aforesaid conduct Defendants, Plaintiff CARMEN THOMAS BUTLER has incurred liability for medical treatment.  The true and exact amount of her medical expenses is currently unknown to Plaintiff and Plaintiffs prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

42.     As a further direct and proximate result of the negligence of Defendants, Plaintiff CARMEN THOMAS BUTLER will be required to and will seek additional future medical care and assistance for treatment of her injuries and will thereby incur additional medical and other related expenses for care of her injuries. The true and exact amount her future medical expenses is unknown to Plaintiff at this time and Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

43.     As a further direct and proximate result of the negligence of Defendants, Plaintiff CARMEN THOMAS BUTLER was rendered sick, sore, lame, disabled, and disordered, both internally and externally and suffered, among other things, severe burns and scarring over her body, emotional distress, pain, discomfort, and anxiety. The exact nature and extent of said injuries are not known to the Plaintiff, who will pray for leave of the Court to insert the same when they are ascertained.  Plaintiff does not at this time know the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

44.     Prior to the occurrence of this accident, Plaintiff was able-bodied individuals, but since said accident Plaintiff is informed and believes, and thereon alleges, that she will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Plaintiff's damage in an amount which is at present unascertained.  Plaintiff will pray leave of Court to show the total amount of her loss of earnings capacity at the time of trial.

## SECOND CAUSE OF ACTION

*(FOR STRICT LIABILITY BY PLAINTIFF CARMEN THOMAS BUTLER AND UNICE BUTLER AGAINST DEFENDANTS TRISTAR PRODUCTS, INC.; AND DOES 1-100, INCLUSIVE)*

45.     Plaintiffs hereby incorporate herein by reference Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46.     Defendants knew and intended that the Pressure Cooker would be used without

inspection for defects therein or in any of its component parts and without knowledge of the hazards involved in such use.

47.     Plaintiffs are informed and believe, and thereupon allege, that at all times herein mentioned, that Defendants were engaged in the business of, amongst other things, formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, supplying, selling, inspecting, servicing, repairing, installing, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and advertising the Pressure Cooker referenced hereinabove and, as such, are strictly liable in tort for the defects and deficiencies herein discussed which caused injury to Plaintiffs as alleged herein.

48.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, the Pressure Cooker was defective and dangerous, both in manufacture and in design, thereby rendering the subject equipment unsafe for its intended use and that defects were a cause of injury to Plaintiffs herein.

49.     The Pressure Cooker was and is unsafe for its intended purpose in that it failed unexpectedly, catastrophically and without warning when used as instructed by Defendants or when used in a manner reasonably foreseeable to Defendants, thereby causing serious and permanent injuries such as those suffered by Plaintiffs herein. The defect(s) existed in the Pressure Cooker at the time it left the possession of the Defendants. Said product did, in fact, cause personal injuries, including those suffered by Plaintiffs herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

50.     At all times mentioned herein, the Pressure Cooker failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in its design outweighed the benefits of said substance and products.

51.     At all times mentioned herein, the foreseeable use of the Pressure Cooker involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, including Plaintiffs herein, but which danger was known or knowable to Defendants, who failed to adequately warn of the substantial danger.

52.     Plaintiffs are informed and believe, and upon such information and belief allege that, at the time of the incident complained of, the subject Pressure Cooker was in substantially the same condition as it was when it left possession of Defendants.

53.     At the times and places mentioned herein, Defendants, knew or should have known at the time said Pressure Cooker left their possession, that said product was defective in design and manufacture, that it did not meet users' and ordinary consumers' reasonable expectations for safety when used in a reasonably foreseeable manner, and was dangerous, defective, unfit and unsafe for its intended use and that said condition was likely to fail catastrophically as described at length hereinabove, when used in a foreseeable manner, and not properly and adequately tested or inspected.

54.     Plaintiffs are informed and believe, and upon such information and belief allege, that the Pressure Cooker had associated deficits, risks and defects, including but not limited to, its defective design, its lack of sufficient warnings and/or use instructions, and those additional items enumerated hereinabove.

55.     These associated deficits, risks and defects were known or knowable by Defendants via the use and employ of scientific knowledge available at the time of design, manufacture, testing, warning and distribution of the Pressure Cooker.

56.     Plaintiffs herein allege that the associated risks, deficits, and defects of the subject Pressure Cooker presented a substantial danger to users of the product and that ordinary consumers would not have recognized or otherwise anticipated these associated risks.

57.     Defendants further failed to warn of the potential risks and hazards associated with the Pressure Cookers when used in a way that was reasonably foreseeable to Defendants. Any warnings provided were inadequate, defective and inappropriate. This lack of sufficient use instructions and/or warnings was a substantial factor in causing injuries and damage to Plaintiffs as herein alleged.

58.     At the times and places mentioned herein, Defendants knew or should have known at the time the Pressure Cooker left said Defendants' possession, that the Pressure Cooker was defective in its warnings, design and manufacture, likely to perform unsafely in a manner unanticipated by a prudent user, and having such knowledge, Defendants should have used reasonable care to warn, or give adequate use instructions and warning of the Pressure Cooker's defects and deficits in design and

operational characteristics to those intending to use said Pressure Cooker in the manner in which it was intended to be used.

59.     At all times and places mentioned herein, Defendants failed to use reasonable care to warn, give adequate use instruction or warning to provide facts describing the Pressure Cooker's dangerous propensities to those whom they could expect to use the product or be endangered by its probable use, and such deficits and defects as illustrated hereinabove were a substantial factor in causing injury and harm to Plaintiffs. The foreseeable risks of catastrophic failure associated with the design of the Pressure Cooker outweighs the benefits associated with the Pressure Cooker.

60.     As a direct and proximate result of the conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER was severely injured as described herein described and suffered severe and permanent physical and emotional injuries including, but not limited to, burns and scarring over her body.

61.     As a direct and proximate result of the aforesaid conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER has suffered permanent injuries to her person, body and health, all to her general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

62.     As a direct and proximate result of the aforesaid conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER has incurred liability for medical treatment. The true and exact amount of her medical expenses is currently unknown to Plaintiff and Plaintiffs pray leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

63.     As a further direct and proximate result of the conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER will be required to and will seek additional future medical care and assistance for treatment of her injuries and will thereby incur additional medical and other related expenses for care of her injuries. The true and exact amount her future medical expenses is unknown to Plaintiff at this time and Plaintiffs pray leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

64.     As a further direct and proximate result of the conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER was rendered sick, sore, lame, disabled, and disordered, both internally and

externally and suffered, among other things, severe burns, scarring, emotional distress, pain, discomfort, and anxiety. The exact nature and extent of said injuries are not known to the Plaintiff, who will pray for leave of the Court to insert the same when they are ascertained. Plaintiffs do not at this time know the exact duration or permanence of said injuries, but are informed and believe, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

65.     Prior to the occurrence of this accident, Plaintiff was an able-bodied individual, but since said accident Plaintiff is informed and believes, and thereon alleges, that she will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Plaintiff's damage in an amount which is at present unascertained. Plaintiff will pray leave of Court to show the total amount of her loss of earnings capacity at the time of trial.

### THIRD CAUSE OF ACTION

*(FOR BREACH OF IMPLIED WARRANTY BY PLAINTIFF CARMEN THOMAS BUTLER AND UNICE BUTLER AGAINST DEFENDANTS, TRISTAR PRODUCTS, INC.; AND DOES 1-100, INCLUSIVE)*

66.     Plaintiffs hereby incorporate herein by reference Paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.     Plaintiffs purchased the Pressure Cooker which was manufactured and placed into the stream of commerce by Defendants.

68.     At all times mentioned herein, Defendants were and are corporations engaged in the business of marketing, designing, manufacturing, fabricating, distributing and selling of the and related equipment for the sale and use by members of the public, including Plaintiffs.

69.     Plaintiffs hereby allege that the Pressure Cooker was not of the same quality as those generally acceptable in the trade, were not fit for the ordinary purposes for which such products are used, were not adequately labeled as such and did not measure up to the promises or facts stated in the sales literature, manuals and communications by and from Defendants.

70.     Defendants impliedly warranted that the Pressure Cooker, which Defendants designed, manufactured, assembled, promoted and sold to Plaintiffs, was merchantable and fit and safe for ordinary use.

71.     Defendants further impliedly warranted that the Pressure Cooker, which Defendants designed, manufactured, assembled, promoted and sold to Plaintiffs was fit for the particular purposes for which it was intended and sold.

72.     Contrary to these implied warranties, the Pressure Cooker was defective, unmerchantable and unfit for its ordinary use when sold, and unfit for the particular purpose for which it was sold, and as a result, caused severe and permanent injury to Plaintiff CARMEN THOMAS BUTLER as above described.

73.     As a direct and proximate result of the conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER was severely injured as described herein described and suffered severe and permanent physical and emotional injuries including, but not limited to, severe burns and scarring over her body.

74.     As a direct and proximate result of the aforesaid conduct of Defendants, as set forth above, Plaintiff has suffered permanent injuries to her person, body and health, all to her general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

75.     As a direct and proximate result of the aforesaid conduct Defendants as set forth above, Plaintiff has incurred liability for medical treatment. The true and exact amount of her medical expenses is currently unknown to Plaintiff and Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

76.     As a further direct and proximate result of the conduct of Defendants, Plaintiff will be required to and will seek additional future medical care and assistance for treatment of her injuries and will thereby incur additional medical and other related expenses for care of her injuries. The true and exact amount her future medical expenses is unknown to Plaintiff at this time and Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

77.     As a further direct and proximate result of the conduct of Defendants, Plaintiff CARMEN THOMAS BUTLER was rendered sick, sore, lame, disabled, and disordered, both internally and externally and suffered, among other things, severe burns, scarring, emotional distress, pain, discomfort, and anxiety. The exact nature and extent of said injuries are not known to the Plaintiff, who will pray for leave of the Court to insert the same when they are ascertained. Plaintiff does not at this time know

the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some of the said injuries are reasonably certain to be permanent in character.

78.     Prior to the occurrence of this accident, Plaintiff was an able-bodied individual, but since said accident Plaintiff is informed and believes, and thereon alleges, that she will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Plaintiff's damage in an amount which is at present unascertained.  Plaintiff will pray leave of Court to show the total amount of her loss of earnings capacity at the time of trial.

## **FOURTH CAUSE OF ACTION**

*(FAILURE TO RECALL/RETROFIT BY PLAINTIFFS CARMEN THOMAS BUTLER AND UNICE BUTLER AGAINST DEFENDANTS TRISTAR PRODUCTS, INC.; AND DOES 1-100, INCLUSIVE)*

79.     Plaintiff hereby incorporates herein by reference Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.     Prior to, on, and after the date of Plaintiff CARMEN THOMAS BUTLER'S burns, and at all relevant times, Defendants designed, manufactured, sold, and marketed the Pressure Cookers for use by consumers, such as Plaintiffs, in the United States.

81.     Prior to, on, and after the date of Plaintiff's burn injuries, and at all relevant times, Defendants knew or reasonably should have known that the Pressure Cooker and its warnings was dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

82.     Prior to, on, and after the date of Plaintiff's burn injuries, and at all relevant times, Defendants became aware of the defects of the Pressure Cooker, including but not limited to the proclivity of them to allow steam to escape causing severe burn injuries to users who used the product in an intended or reasonably foreseeable manner.

83.     Defendants failed to recall, retrofit, or warn consumers about the danger of the Pressure Cookers prior to, on, and after the date of Plaintiff's burn injuries.

84.     In light of the severity and amount of the complaints transmitted to Defendants, and the additional available data, reasonable manufacturers and distributors under the same or similar

circumstances would have recalled or retrofitted the Pressure Cookers and would thereby have avoided and prevented harm to scores of consumers.

85.    As a direct and proximate result of the above-referenced negligent failure to recall or retrofit, Plaintiff suffered the injuries described herein.

86.    The negligent failure of Defendants, to recall or retrofit the Pressure Cookers and their failure to furnish timely and adequate warnings were substantial factors in causing Plaintiff's injuries and damages, as described herein.

## FIFTH CAUSE OF ACTION

*(FRAUDULENT CONCEALMENT BY PLAINTIFFS CARMEN THOMAS BUTLER AND UNICE BUTLER AGAINST DEFENDANTS TRISTAR PRODUCTS, INC.; AND DOES 1-100, INCLUSIVE)*

87.    Plaintiff hereby incorporates herein by reference Paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88    At the time in which the Pressure Cooker was purchased, up through and during the period in which it was used, Defendant Tristar fraudulently suppressed material information regarding the safety and efficacy of its Pressure Cookers, including information regarding the risk of the lid to suddenly, unexpectedly and prematurely come off while the Pressure Cooker while they remained pressurized. Plaintiffs believe that the fraudulent misrepresentation described herein was intentional to maintain and support the sales volume of its Pressure Cookers.

89.    At the time Defendant Tristar concealed the fact that its Pressure Cookers were not safe for use by consumers, Defendant Tristar was under a duty to communicate this information to Plaintiffs, her family, and the general public in such a manner that they could appreciate the risks and defects associated with its Pressure Cookers.

90.    Plaintiffs relied upon the Defendant Tristar's outrageous untruths regarding the safety of its Pressure Cookers.

91.    Defendant Tristar did not provide Plaintiffs with the information necessary for them to make an adequate, informed decision whether to purchase one of its Pressure Cookers.

92.    Defendant Tristar Pressure Cookers improperly over-marketed and advertised its

Pressure Cookers as "safe." Said advertisements and promotions contained material misrepresentations as to the safety and efficacy of its Pressure Cookers, which Defendant Tristar knew to be false, for the purpose of fraudulently inducing consumers, such as the Plaintiffs, to purchase its Pressure Cookers.

93.     Plaintiffs relied on these material misrepresentations when deciding to purchase and use their Pressure Cooker.

94.     Had the Plaintiffs been aware of the hazards associated with Defendant Tristar's Pressure Cookers, they would not have purchased or used their Pressure Cooker.

95.     Upon information and belief, Plaintiffs aver that Defendant Tristar actively and fraudulently concealed information in Defendant Tristar's exclusive possession regarding the risk hazards associated with the premature removal of its Pressure Cookers lids with the purpose of preventing consumers, such as the Plaintiff in this case, from discovering these hazards.

96.     As a direct and proximate result of Defendants Tristar's malicious and intentional concealment of this material information from Plaintiffs, Defendant Tristar caused or contributed, directly and proximately, to Plaintiffs' injuries and damages.

97.     Defendant Tristar's conduct, as described above, was extreme and outrageous. Defendant Tristar risked the safety and well-being of the consumers and users of its Pressure Cookers, including the Plaintiffs in this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant Tristar made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant Tristar's outrageous conduct warrants an award of punitive damages.

98.     Plaintiff asserts this cause of action in the broadest sense available under the law, to include pleading same pursuant to all substantive law that applies to this case, as may be determined by choice of law principles regardless of whether arising under statute and/or common law.

## SIXTH CAUSE OF ACTION

*(LOSS OF CONSORTIUM BY PLAINTIFF UNICE BUTLER AGAINST DEFENDANTS TRISTAR PRODUCTS, INC.; AND DOES 1-100, INCLUSIVE)*

99.     Plaintiffs hereby incorporate paragraphs 1 through 98, inclusive, and incorporate them as if set forth in full in this cause of action.

100.   At all times herein mentioned, CARMEN THOMAS BUTLER and UNICE BUTLER were married and are wife and husband.

101.   As a direct and proximate result of the aforementioned conduct of Defendants, and the resultant injuries to Plaintiff, CARMEN THOMAS BUTLER, Plaintiff, UNICE BUTLER, has suffered and is reasonably certain to suffer in the future, the loss of love, comfort, companionship, comfort, affection, society, solace, moral support, and physical assistance in the operation and maintenance of the home, causing damage in excess of the jurisdiction of the limited Superior Court.

**WHEREFORE**, Plaintiffs pray for judgment and relief against the Defendants, and each of them, as follows:

1.   For general damages in an amount within the jurisdictional limits of this court;

2.   Past, future medical and related items of expense, according to proof;

3.   For loss of future earnings and earning capacity, according to proof;

4.   For prejudgment interest;

5.   For punitive damages;

6.   For costs of suit and attorney fees, if awarded by the court, incurred herein; and

7.   For such other and further relief as to the Court appears just and proper.

DATED: September 11, 2019                    SHOOP A PROFESSIONAL LAW CORP.


David R. Shoop, Esq.
Thomas S. Alch, Esq.
Attorneys for Plaintiffs, CARMEN THOMAS BUTLER
and UNICE BUTLER

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: September 11, 2019

SHOOP A PROFESSIONAL LAW CORP.

David R. Shoop, Esq.
Thomas S. Alch, Esq.
Attorneys for Plaintiffs CARMEN THOMAS BUTLER
and UNICE BUTLER

29
COMPLAINT

# COPY

SUM-100

## SUMMONS
### *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

TRISTAR PRODUCTS, INC., and DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CARMEN THOMAS BUTLER and UNICE BUTLER

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 1 2 2019

L. Freeland

**BY FAX**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of the State of California for the County of Riverside, 4050 Main St, Riverside, CA 92501 | **CASE NUMBER**<br>*(Número del Caso):*<br>RIC 1904666 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Thomas S. Alch, SHOOP | APLC, 9701 Wilshire Blvd. Suite 950, Beverly Hills, CA 90212 (310) 620-9533

| DATE:<br>*(Fecha)* SEP 1 2 2019 | Clerk, by<br>*(Secretaria)* L. FREELAND | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

NOTICE OF CASE MANAGEMENT CONFERENCE

BUTLER VS TRISTAR PRODUCTS

CASE NO. RIC1904666

The Case Management Conference is scheduled for 03/10/20 at  8:30 in Department 01.

No later than  15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case. CRC, Rule 3.725.

The  plaintiff/cross-complainant  shall  serve  a  copy  of  this  notice  on  all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

Requests for accommodations can be made by submitting Judicial Council form MC-410 no fewer than five court days before the hearing. See California Rules of Court, rule 1.100

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 09/12/19

by: _____

LAURA FREELAND , Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

### NOTICE OF DEPARTMENT ASSIGNMENT

BUTLER VS TRISTAR PRODUCTS

CASE NO. RIC1904666

This case is assigned to the HONORABLE Judge Chad W. Firetag in Department 03 for Law and Motion purposes only.

The case is assigned to Honorable Judge Craig Riemer in Department 1 for case management hearings (Case Management Conferences, Order to Show Causes, Status Conferences and Trial Setting Conferences).

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316).  Tentative Rulings for each law and motion matter are posted on the internet by 3:00 pm on the court day immediately before the hearing at <http://riverside.courts.ca.gove/tentativerulings.shtml>.  If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 pm the court day before the hearing.  If no request for oral argument is made by 4:30 pm, the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties

Requests for accommodations can be made by submitting Judicial Council form MC-410 no fewer than five court days before the hearing.  See California Rules of Court, rule 1.100

### CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 09/12/19                    by:   L Freeland

LAURA FREELAND, Deputy Clerk

# COPY

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Thomas S. Alch (SBN 136860)
SHOOP, A PROFESSIONAL LAW CORPORATION
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
TELEPHONE NO.: 310 620 9533    FAX NO.: 310 620 6330
ATTORNEY FOR *(Name):* Plaintiffs, Carmen Thomas Butler and Unice Butler

**FOR COURT USE ONLY**

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 1 2 2019

L. Fregland

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Riverside
STREET ADDRESS: 4050 Main St.
MAILING ADDRESS: 4050 Main St.
CITY AND ZIP CODE: Riverside 92501
BRANCH NAME: Riverside Historic Courthouse

**CASE NAME:**
Carmen Thomas Butler, et al. v. Tristar Products, Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | **CASE NUMBER:** |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | RIC 1 9 0 4 6 6 6 |
| | | | JUDGE |
| | | | DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* Six causes of action
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 9/11/2019

Thomas S. Alch
_____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

BY FAX

# COPY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

RI-030

☐ BANNING 311 E. Ramsey St. Banning, CA 92220
☐ BLYTHE 265 N. Broadway, Blythe, CA 92225
☐ HEMET 880 N. State St. Hemet, CA 92543
☐ MORENO VALLEY 13800 Heacock St., Sta. D201
   Moreno Valley, CA 92553

☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563
☐ PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262
☒ RIVERSIDE 4050 Main St., Riverside, CA 92501
☐ TEMECULA 41002 County Center Dr., #100, Temecula, CA 92591

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number and Address):
Thomas S. Alch (SBN 136860)
SHOOP, A PROFESSIONAL LAW CORPORATION
9701 Wilshire Blvd. Suite 950
Beverly Hills, California 90212
   TELEPHONE NO 310 620 9533       FAX NO. (Optional) 310 620 6330
E-MAIL ADDRESS (Optional) Thomas.alch@shooplaw.com
ATTORNEY FOR (Name) Carmen Thomas Butler and Unice Butler

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 1 2 2019

L. Freeland

PLAINTIFF/PETITIONER: Carmen Thomas Butler and Unice Butler

DEFENDANT/RESPONDENT: Tristar Products, Inc., a Pennsylvania Corporation

CASE NUMBER: **RIC** 1 9 0 4 6 6 6

**CERTIFICATE OF COUNSEL**

BY FAX

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒ The action arose in the zip code of:   92505

☐ The action concerns real property located in the zip code of:

☐ The Defendant resides in the zip code of:

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date  9/11/2019

Thomas S. Alch
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)

► _(signature)_
(SIGNATURE)

Approved for Mandatory Use
Riverside Superior Court
RI-030 (Rev. 04/13/16)

**CERTIFICATE OF COUNSEL**

Page 1 of 1
Local Rule 1.0015
riverside.courts.ca.gov/localforms/localforms.shtml